UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

USA UNITED FLEET INC.,
USA UNITED TRANSIT INC.,
USA UNITED BUS EXPRESS INC.,
TOM TOM ESCORTS ONLY, INC.

            Plaintiffs,

-against-

DIVISION 1181 AMALGAMATED TRANSIT
UNION NEW YORK EMPLOYEES PENSION FUND,
DIVISION 1181 AMALGAMATED TRANSIT
UNION NEW YORK WELFARE FUND
and NEW YORK CITY DEPARTMENT
OF EDUCATION,
DIVISION 1181 AMALGAMATED TRANSIT
UNION, MICHAEL CORDIELLO,
STANLEY BRETTSCHNEIDER, NEIL STRAHL,
DOMENIC GATTO, ANDREW BRETTSCHNEIDER,
JEAN-CLAUDE CALIXTE and THOMAS
JEMMOTT and JOHN DOES I-X being fictitious
names intended to be FUNDS Trustees, their true
names being unknown to plaintiffs.

            Defendants.

And

DIVISION 1181 AMALGAMATED TRANSIT
UNION NEW YORK WELFARE FUND
and its Trustees: MICHAEL CORDIELLO,
STANLEY BRETTSCHNEIDER, NEIL STRAHL,
DOMENIC GATTO, ANDREW BRETTSCHNEIDER,
JEAN-CLAUDE CALIXTE and THOMAS
JEMMOTT,

            Counterclaim Plaintiffs

**AMENDED
COMPLAINT**

Case No.:11-CV-2140 (NGG)

**DEMAND FOR
JURY TRIAL**

-against-

USA UNITED FLEET INC.,
USA UNITED TRANSIT INC.,
USA UNITED BUS EXPRESS INC.,
TOM TOM ESCORTS ONLY, INC.

And

DANA PRISTAVEC, WILLIAM MORAN,
DENNIS SCIALPI, THOMAS SCIALPI,
NORTHEAST TRANSIT, INC., NORTHEAST
NORTHEAST TRANSIT, INC., NORTHEAST
BUSES, INC., and NORTHERN TRANSIT, INC.

Counterclaim Defendants.

----------------------------------------------------------------X

Plaintiffs, through their attorney ROBERT PRIGNOLI, ESQ., complaining of the defendants herein, respectfully show and allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of the Court arises pursuant to 28 USC §1331, 28 USC §1337, 29 USC §1109, 29 USC §158 (b), 29 USC §185 Section 501 (e)(1) of ERISA, Section 301 of LMRA, 18 USC §1961, et seq, (RICO).

2. Venue is proper in this district pursuant to 29 USC §1391, Section 502 (e)(2) ERISA, 29 USC §1132 (e)(2).

3. The predicate acts complained of herein involve interstate commerce and inter and intrastate use of the United States mails and electronic communications, and mail and wire fraud in violation of 18 USC 1341 and 1343.

## PARTIES

4. That at all times hereinafter mentioned, the plaintiff, USA UNITED FLEET, INC. ("FLEET"), was and still is a New York State domestic corporation located in the Borough of Staten Island, County of Richmond, City and State of New York.

5. That at all times hereinafter mentioned, the plaintiff USA UNITED TRANSIT, INC. ("TRANSIT"), was and still is a New York State Corporation located in the Borough of Staten Island, County of Richmond, City and State of New York.

6. That at all times hereinafter mentioned plaintiff USA UNITED BUS EXPRESS, INC. ("EXPRESS"), was and still is a New York domestic

corporation located in the Borough of Staten Island, County of Richmond, City and State of New York.

7. That at all times hereinafter mentioned plaintiff TOM TOM ESCORTS ONLY, INC. ("TOM TOM"), was and still is a New York State domestic corporation located in the Borough of Staten Island, County of Richmond, City and State of New York.

8. That upon information and belief, at all times hereinafter mentioned, the defendant, DIVISION 1181 AMALGAMATED TRANSIT UNION NEW YORK EMPLOYERS PENSION FUND and DIVISION 1181 AMALGAMATED TRANSIT UNION NEW YORK WELFARE FUND (the "FUNDS"), were and still are pension and welfare benefit FUNDS for transit workers located in the City and State of New York.

9. That upon information and belief, at all times hereinafter mentioned, the defendant DIVISION 1181 AMALGAMATED TRANSIT UNION (the "UNION") was and still is an international labor union with a local chapter situated in the City and State of New York.

10. That upon information and belief, and at all times hereinafter mentioned the defendant, NEW YORK CITY DEPARTMENT OF EDUCATION (the "DOE") was and still is a municipal corporation owned and operated by the City of New York.

11. That upon information and belief, and all times hereinafter mentioned defendant ROBERT D'ULISSIE is the director of the FUNDS with an office located in the Borough of Queens, City and State of New York.

12.     That upon information and belief, and all times hereinafter mentioned defendant MICHAEL CORDIELLO was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

13.     That upon information and belief, and all times hereinafter mentioned defendant STANLEY BRETTSCHNEIDER was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

14.     That upon information and belief, and all times hereinafter mentioned defendant NEIL STRAHL was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

15.     That upon information and belief, and all times hereinafter mentioned defendant DOMINIC GATTO was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

16.     That upon information and belief, and all times hereinafter mentioned defendant ANDREW BRETTSCHNEIDER was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

17.     That upon information and belief, and all times hereinafter mentioned defendant JEAN-CLAUDE CALIXTE was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

18. That upon information and belief, and all times hereinafter mentioned defendant THOMAS JEMMOTT was and still is a Trustee of the FUNDS with an office located in the Borough of Queens, City and State of New York.

19. "JOHN DOES" 1-X are fictitious names representing defendant FUNDS' Trustees, past and present whose names are currently unknown to plaintiffs. (Defendants set forth above in paragraphs 10 through 18 shall be collectively referred to as ("TRUSTEES.)

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR A DECLARATORY JUDGMENT

20. That Notice of Claim was served on the DOE pursuant to Education Law § 2562.

21. Plaintiffs seek a declaration by the Court to determine the rights and legal relations of the parties herein.

22. Plaintiffs apply to this Court to establish the following rights, facts, legal relations and obligations of the parties:

a. Plaintiffs are not in default of their Collective Bargaining Agreement with defendant UNION;

b. Plaintiffs are not Habitually Late Paying Employers of contributions to the defendants FUNDS;

c. Plaintiffs are not obligated to post any security deposit with the defendants FUNDS;

d. Plaintiffs' Contract with defendant DOE does not entitle it to withhold plaintiffs' monies to fund defendants FUNDS' demands for a security deposit;

e. Plaintiffs' Contract with the DOE requires thirty (30) day written notice to plaintiffs prior to any withholding of FUNDS owed to plaintiffs;

f. Defendant DOE has failed to follow its Contract with plaintiffs by its failure to provide requisite notice prior to the withholding of plaintiffs' service FUNDS; and

g. Plaintiffs may post a bond in lieu of any cash security deposit required by the defendants FUNDS

## AS AND FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

23. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

24. Pursuant to Section 11(h) of the Collective Bargaining Agreement ("CBA"), plaintiffs are "bound to…policies and procedures adopted by the Trustees," including the Joint Policy. Moreover, the Joint Policy is incorporated by reference into the CBA, a valid, binding and enforceable contract to which plaintiffs are a party.

25. Plaintiffs further are third-party beneficiaries of the Joint Policy which expressly references the Employers.

26. Section 4, Paragraph 7 of the Joint Policy provides that

27. Section 4, Paragraph 10 of the Joint Policy further provides that

"[t]he Trustees shall provide written notice of the payroll audit findings and shall not pursue remedies pursuant to the Employer Protection Provisions until the earliest, four (4) weeks after the date to the notice of payroll audit findings, and during this four week period, the Trustees and the Funds' administrative staff will endeavor in good faith to resolve all disputes regarding the audit... If a written response to a payroll audit is received, the Fund will reply thereto in writing…"

28. Both plaintiffs TRANSIT and FLEET submitted objections and comments to the draft Reports, in writing, to the FUNDS prior to the alleged "final" report being issued.

29. The alleged "final" reports were issued for the period from January 1, 2009 through April 30, 2010 for both plaintiffs TRANSIT and FLEET before the auditor reviewed the objections and comments from said plaintiffs.

30. In order for there to be an attachment from the plaintiffs' service payments from the defendant DOE, there must be a finding of a violation of the Employee Protection Provisions ("EPP"), and there must be a finding by the TRUSTEES of a final amount due to the FUNDS.

31. Upon information and belief, there was no finding by the TRUSTEES of the amount due from either plaintiffs TRANSIT or FLEET for the audits for the period January 1, 2009 through April 30, 2010.

"[a]fter a payroll audit of an Employer is conducted; an auditor shall review with the Employer the payroll audit findings. After providing the Employer with a reasonable time to respond to the findings, the auditor shall issue a final report."

32. A TRUSTEE determination, or at least a good faith TRUSTEE determination, of an amount due to the FUNDS from plaintiffs' TRANSIT and FLEET Audit were not complete and the adjustment procedures were still ongoing between said plaintiffs and the FUNDS' auditors.

33. In fact, on May 12, 2011, after the FUNDS attached the plaintiff TRANSIT service payments from the defendant DOE, the FUNDS' auditor reduced the amount claimed from plaintiff TRANSIT by the amount of $61,212.14. The audit is still not final.

34. On June 8, 2011 the FUNDS attached plaintiff FLEET's service payments from defendant DOE in the sum of $777,967.54 when said plaintiffs' actual obligations are only approximately $11,000.00 for these plaintiffs.

35. Plaintiffs have performed all of their obligations under the CBA, which incorporates by reference the Joint Policy.

36. The FUNDS have breached the Joint Policy by and through the conduct described above, including, inter alia: (1) denying plaintiffs, USA United Transit, Inc. and USA United Fleet, Inc., an opportunity to review the audit findings with the auditor, and a reasonable time to respond t the audit findings, as required by Section 4, Paragraph 7 of the Joint Policy; (2) improperly providing written notice of payroll audit findings that they knew were not final, and prematurely triggering the four week review period; and (3) refusing to resolve in good faith plaintiffs' USA United Transit, Inc. and USA United Fleet, Inc., disputes regarding the audits, but instead sending notice to defendant DOE announcing their intent to attach the full, fictitious and inflated amount from plaintiff USA United Transit, Inc.'s May 2011 payment and from plaintiff USA United Fleet, Inc.'s June 2011 payment.

37. As a direct and proximate result of defendants' wrongful conduct and breaches of contract, plaintiffs have been damaged in amounts to be proven at trial but not less than $1,000,000.00.

**AS AND FOR A THIRD CAUSE OF ACTION**
**<u>NEGLIGENCE</u>**

38. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

39. In conducting an audit of plaintiffs' records pursuant to the CBA and Joint Policy, the FUNDS owe a duty of care to plaintiffs under the terms of the CBA and Joint Policy, which provides for certain rights and procedures concerning audits of plaintiffs' contributions to the FUNDS.

40. Defendants failed to undertake and mange the audit process with the necessary care and skill, and thus breached their respective duties, by and through the conduct described above, including but not limited to: (1) finalizing the audits of plaintiffs' TRANSIT and FLEET prior to the audits being completed by the plaintiffs and FUNDS' auditor; (2) refusing to incorporate the plaintiffs' TRANSIT and FLEET's corrections and recalculations into the final Payroll Reports; (3) ignoring plaintiffs' TRANSIT and FLEET'S multiple attempts to notify all parties that the audits were deficient, and contained egregious errors; and (4) prematurely issuing a false "final" audit reports, solely for the purpose of beginning the four week period leading to the attachment of defendant DOE's May (for TRANSIT) and June (for FLEET) payments to plaintiffs.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FRAUD

41. As a direct and proximate result of defendants' wrongful conduct, plaintiffs have been damaged in an amount to be proven at trial but no less than $2,000,000.00 plus punitive damages.

42. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

43. In connection with the FUNDS' audits of plaintiffs, defendants made several false material representations of fact to plaintiffs, including but not limited to Michael Jerry's statements that the FUNDS Auditor would fix the errors in the Draft Report and clear up all discrepancies before submitting a Final Report to the Trustees, his representations that he would review and incorporate additional corrective documentation and the Trustees' representation that the reports issued were in fact "final" audit reports, which showed that plaintiffs owed the FUNDS in excess of $363,000.00 and $777,967.00 dollars for the TRANSIT and FLEET Audits, respectively, for the period from January 1, 2009 through April 30, 2010.

44. On April 29, 2011 the defendant TRUSTEES deemed the aforementioned FLEET and TRANSIT audits final, however the FUNDS auditor's agent Michael Jerry indicated in a May 18, 2011 memo to plaintiffs that on May 19, 2011 he would be commencing the FLEET audit and continuing the TRANSIT audit.

45. Upon information and belief, defendants knew that these representations were false at the time they were made because they intended not to incorporate plaintiffs' corrective data into their calculations, but rather to submit the artificially inflated audit numbers to defendant DOE so as to attach a larger amount from plaintiffs service payments from defendant DOE. Moreover, Mr. Jerry on more than one occasion told plaintiffs that he knew the audit numbers were excessive and inaccurate.

46. Defendants made such representations with the express intention of inducing plaintiffs to rely on them.

47. Plaintiffs did in fact rely upon the FUNDS' representations, without knowledge as to their falsity. Plaintiffs continued to provide the FUNDS with data demonstrating the discrepancies in the audit reports, with the understanding and belief that the FUNDS would review and incorporate such date prior to the issuance of "final" reports.

48. Upon information and belief, the defendant FUNDS and UNION and its auditors and the defendant Trustee conspired to perpetrate this fraud against plaintiffs. Together they agreed to conduct a review procedure that was not in fact an audit, to ignore the volumes of corrective data submitted by plaintiffs in response to the draft audit reports, and to submit fraudulent "final" audit reports, solely with the intention of beginning the four week review period that will culminate in the intended attachment of over $1,100,000.00 dollars from defendant DOE's service payments to plaintiffs.

49. The overt act of submitting the fraudulent "final" audit reports for the plaintiffs FLEET and TRANSIT was done in furtherance of defendants' fraudulent conduct, and has injured, and will continue to injure plaintiffs.

50. As a direct and proximate result of defendants' fraudulent conduct, plaintiffs have been damaged in an amount to be proven at trial but no less than $5,000,000.00 plus punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACT

51. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. Plaintiffs are party to a contract with the defendant DOE, pursuant to which they provide busing services for students in and around New York City.

53. Defendants are aware of the existence of this contract, as they are seeking the attachment of a payment owed to plaintiffs under said contract.

54. Defendants are intentionally interfering with plaintiffs' contract with the DOE by attempting to attach plaintiffs' service payments from defendant DOE based upon artificially inflated and fraudulent audit reports well in excess of what the FUNDS actually are owed.

55. This intended attachment will result in a breach of the contract, in that plaintiffs will not receive the full payment amount to which they are contractually entitled.

56. Moreover since the defendant TRUSTEES are owners of competitor bus companies, upon information and belief, they specifically stand to gain by forcing plaintiffs into insolvency.

57. As a matter of fact TRUSTEE Dominic Gatto is a principal of our competitor Atlantic Express Transportation Corp. TRUSTEE Gatto who testified under immunity in the Federal racketeering case against former UNION 1181 President Salvatore (Hotdogs) Battaglia, admitted to paying bribes to Battaglia.

58. As a direct and proximate result of defendants' tortuous interference with a contract, plaintiffs will be damaged in an amount to be proven at trial but no less than $5,000,000.00 plus punitive damages.

## AS AND FOR A SIXTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

59. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

60. Plaintiffs seek a declaration by the Court to determine the rights and legal relation of the parties herein.

61. Plaintiffs apply to this Court to establish the following rights, facts, legal relations and obligations of the parties.

a. Public competitive bidding laws are intended to benefit taxpayers and should be construed with sole reference to the public interest;

b. The Employee Protection Provision ("EPP") in the contract between the plaintiffs and the defendant DOE have an anti competitive impact on competitive bidding;

c. The defendant DOE cannot compel plaintiffs to enter into a collective bargaining agreement with the defendant UNION;

d. Ensuring labor peace, uninterrupted services and experienced workers are not stated goals of public competitive bidding laws;

e. EPP drive up labor costs and are therefore antithetical to public competitive bidding laws;

f. EPP prevent non-union contractors from bidding on defendant DOE contracts;

g. Sine the defendant UNION negotiates a single contract with all companies performing work under contracts with defendant DOE and every company must pay the identical wages and benefits the result is anticompetitive and contrary to public competitive bidding laws;

h. EPP discourages competition which increases contract costs;

i. EPP violates General Municipal Law §103(1) which mandates that all contracts for public work be awarded to the lowest responsible bidder;

j. EPP violates Education Law §305 which mandates that contracts for the transportation of school children shall be awarded to the lowest responsible bidder;

k. EPP violates the law since they are not nationally related to either competitive bidding or the public interest; and

l. EPP in the contract between plaintiffs and defendant DOE is void.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### ENTERPRISE CORRUPTION

62. Plaintiffs repeat and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. Defendants UNION and FUNDS have a long history of MOB domination.

64. The report of independent counsel Richard Mark retained to investigate organized crime in the UNION and FUNDS concluded that said defendants were "infiltrated and controlled" by organized crime and that the defendant UNION "has used the local union to conduct criminal racketeering".

65. Defendant UNIONS own independent Counsel, Richard Mark found that International Vice President Joseph Welch, the UNION Vice President who

was assigned as ATU's liaison to Local 1181 from the 1970's through the imposition of the trusteeship in 2006, was aware for decades that the top officers of defendant UNION associated with known organized crime figures, but never considered it a matter needing ATU investigation.

66. On July 28, 2005, a Federal grand jury returned an indictment which alleged that the Genovese crime family controlled defendant UNION for its own benefit. The grand jury indicted defendant UNION's Financial Secretary, Julius Bernstein, for charges including labor racketeering, extortion, obstruction of justice, and improperly influencing the operation of a benefit plan. Defendant UNION's President, Salvatore Battaglia, and the Director of defendant FUNDS, Ann Chiarovano, were indicted for obstruction of justice. After indictment, Battaglia would remain in office for fifteen months and Bernstein for eleven. The ATU took no steps to remove either Battaglia or Bernstein from office. Nor did the ATU initiate an investigation into the allegations upon learning of the charges against these three ATU officials. Chiarovano remained in her position even after her guilty plea of obstruction the Federal investigation of the Genovese crime family's involvement in the affairs of defendants FUNDS.

67. On June 16, 2006 a new criminal complaint against Bernstein was unsealed in the Southern District of New York. The compliant alleged that Bernstein continued to engage in unlawful extortion involving bus companies after his indictment in July 2005. The ATU still did not initiate an investigation into charges against Bernstein.

68.	On August 11, 2006 Chiarovano pled guilty to obstruction of justice, and on September 14, 2006 Matthew (Marty the Horse) Iannello pled guilty, admitting that organized crime had run defendant UNION for its own benefit, receiving payments from owners of both unionized and non-unionized school bus companies.

69.	The ATU never required that Battaglia and Bernstein resign their union positions; rather, they both left their positions as a condition for their release on bail. (Bernstein left his Local 1181 position in June, 2006; Battaglia, in November 2006.) Under the terms of the ATU Constitution the ATU had authority to suspend an officer and to appoint a successor when the ATU deemed a situation "imminently dangerous to the welfare or best interests of the International Union or a subordinate body."

70.	Former defendant UNION President Salvatore Battaglia pled guilty to extorting bus companies while a member of the Genovese crime family and was sentenced to fifty seven (57) months in federal prison.

71.	Former UNION, FUNDS, TRUSTEES and Board members Nicholas Maddalone and Paul Maddalone pled guilty to extortion of bus companies and racketeering in Federal Court in November, 2009.

72.	The decades of corruption and documented MOB influence provide the context within which plaintiffs business relations with the defendants occur.

73.	18 USC Section 1961 (1)(B) defines "racketeering activity" as, inter alia "any act which is indictable under any of the following provisions of title 18, United States Code:"

a. "section 1341 (relating to mail fraud)";

b. "section 1343 (relating to wire fraud)";

c. "section 1503 (relating to obstruction of justice)";

d. "section 1512 (relating to tampering with a witness, victim, or an informant)";

e. "section 1513 (relating to retaliating against a witness, victim, or an informant)";

f. "section 1951 (relating to interference with commerce, robbery, or extortion)"; and

g. "section 1952 (relating to racketeering)".

74. Each defendant is a "person" as defined by 18 USC Section 1961 (3).

75. Defendants UNION, FUNDS and TRUSTEES constitute an "enterprise" within the meaning of 18 USC Section 1961(4).

76. Defendants UNION, FUNDS and TRUSTEES's acts, as alleged herein, constitute a "pattern of racketeering activity" to obtain money or property by fraudulent means within the meaning of 18 USC Section 1961(5).

77. As alleged above-herein defendants UNION, FUNDS and TRUSTEES and each of them, are persons who comprise an enterprise which, through a pattern of racketeering activity, systematically obtains money or property by false means or fraudulent pretense, through the commission of mail and wire fraud in violation of 18 USC Sections 1341 and 1343.

78. As alleged above herein, defendants, and each of them, are persons who comprise an enterprise which, through a pattern of racketeering activity, obtain through fraudulent means money or property of plaintiffs.

79. Defendants, UNION, FUNDS and TRUSTEES, and each of them, have received, and continue to receive, income derived from the pattern of racketeering activity, as alleged above herein, used and invested, and continue to use and invest, portions of such income, or the proceeds of such income, in the acquisition of an interest in, or the establishment or operation of an enterprise which is engaged in, or the activities of which affect, interstate and foreign commerce, all in violation of 18 USC Section 1962(a).

80. Defendants, UNION, FUNDS, and TRUSTEES, and each of them, through a pattern of racketeering activity, as alleged above herein, have acquired or maintained, and continue to acquire and maintain, an interest in or control of an enterprise which is engaged in, or the activities of which affect, interstate and foreign commerce, all in violation of 18 USC Section 1962(b).

81. Defendants, UNION, FUNDS and TRUSTEES, comprise an enterprise engaged in activities which affect interstate commerce and conduct or participate in the conduct of that enterprises' affairs through a pattern of racketeering activity as alleged herein, all in violation of 18 USC §1962(c).

82. Upon information and belief the enterprises involved in illegal activities include defendants UNION, FUNDS and TRUSTEES.

83. Upon information and belief the enterprises involved in illegal activities include defendants UNION, FUNDS and TRUSTEES are acting in furtherance of the enterprise corruption.

84. Upon information and belief it is the intent of defendants UNION, FUNDS and TRUSTEES to defraud the plaintiffs.

85. Upon information and belief it is the intent of the defendants UNION, FUNDS and TRUSTEES to drive plaintiffs out of business in order to obtain by coercion, fraud and manipulation the plaintiffs' contracts with defendant DOE.

86. Upon information and belief the defendants UNION, FUNDS and TRUSTEES engaged in a scheme to create fraudulent financial audits of plaintiffs' companies to artificially inflate plaintiffs' respective contributions to plaintiffs' employees pension and welfare funds, (the defendants FUNDS) and then use the internet, telephone and the United States Postal Service to furtherance of their illicit schemes.

87. Upon information and belief these fraudulent audits started in 2009 and continue to date.

88. Upon information and belief the defendants UNION, FUNDS and TRUSTEES abuse the attachment procedure set forth in plaintiffs contract with the defendant DOE as a tool to extort and coerce illegitimate payments to the defendants FUNDS based upon fraudulent audits of plaintiffs' companies.

89. Upon information and belief the defendants FUNDS calculated plaintiffs' obligations for pension and welfare contribution totally ignoring the plaintiffs' payroll records and instead used fictitious data.

90. Upon information and belief the defendant FUNDS calculated plaintiffs' obligations of pension and welfare contributions for phantom employees.

91. Upon information and belief defendant FUNDS instructed their auditors to disregard standard industry which is also known as Generally Accepted Accounting Standards ("GAAS").

92. Upon information and belief defendants FUNDS audits purposely used flawed methods designed specifically to illegally inflate plaintiffs' obligations for pension and welfare contributions.

93. Upon information and belief in May 2009 the defendant FUNDS accounting firm Buchbinder, Tunick and Company, LLC (the "Auditor") deemed an approximate $5,000,000.00 pension and welfare contribution deficit after having reviewed only 1% of plaintiffs' payroll records or 2000 pages out of some 200,000 documents.

94. Defendants FUNDS then deemed the May 2009 audit "Final" and attempted to attach $5,000,000.00 for plaintiffs service payments due from the defendant DOE.

95. Of the $2,000,000.00 paid to the FUNDS by plaintiffs following the May 2009 audit $1,100,000.00 was paid for phantom employees.

96. That is $1,100,000.00 was paid for pension benefits by plaintiffs for employee and employer contributions even though no employees existed.

97. Upon information and belief the defendants UNION, FUNDS and TRUSTEES coerced a $1,100,000.00 payment from plaintiffs which was not paid for employee pension and welfare benefits.

98. It is a clear violation of ERISA to collect pension benefits for employees that do not exist.

99. Upon information and belief the defendants UNION, FUNDS and TRUSTEES deemed the May 29, 2009 audit final knowing that it was based upon fraudulent data.

100. As further evidence of this scheme to artificially inflate plaintiffs' obligations for pension and welfare contributions, defendants FUNDS routinely ignored plaintiffs' payroll records and failed to give plaintiffs credit for the following:

   a. Effective May 12, 2010 new Hires who receive no Union pension and welfare benefits for the first three (3) months for pension and six (6) months for welfare and therefore no employer contributions (prior to May 12, 2010 there was a three (3) month period for both pension and welfare);

   b. Employees join plaintiffs' firm from other driver's unions not affiliated with Amalgamated Transit Union and are considered New Hires (for audit purposes only);

   c. Drivers on suspension;

   d. Drivers on workers' compensation;

   e. Drivers on leave; and

f.   Drivers on disability.

101.   A thorough review of plaintiffs' records revealed that its obligations from the May 29, 2009 audit were close to $900,000.00.

102.   Upon information and belief defendants FUNDS, UNION and TRUSTEES illegally inflated the plaintiffs audits by $4,100,000.00 to both defraud the plaintiffs and drive them out of business and take over their contracts with defendant DOE.

103.   Upon information and belief defendants FUNDS over attached plaintiffs service payments on January 3, 2011 from the defendant DOE in the sum of $354,173.64.

104.   Upon information and belief defendants FUNDS and TRUSTEES created fraudulent documentation on December 13, 2010, December 30, 2010 and January 10, 2011 to justify their illegal money grab from plaintiffs. Defendants used the mail, the internet and the telephone to transmit their fraudulent documents.

105.   Today plaintiffs face this continued fraudulent scheme again with the audits to plaintiffs TRANSIT and FLEET for the period from January 1, 2009 through April 30, 2010.

106.   Plaintiffs received the first draft of the TRANSIT Audit on February 23, 2011 and responded in writing that the Auditor failed to follow GAAS and that plaintiff TRANSIT was entitled to approximately $100,000.00 in credits.

107. As a matter of fact the agent of Auditor, Michael Jerry, has visited plaintiffs' offices many times in the past month reviewing plaintiffs' records to complete the TRANSIT and FLEET audits.

108. The defendants FUNDS' claim that the TRANSIT and FLEET audits are deemed "final" and have made demands of $363,355.67 for the TRANSIT audit and $777,967.54 for the FLEET audit.

109. Plaintiffs have disputed about $766,000.00 of the FLEET audit and served their response to the FUNDS on April 11, 2011 and April 12, 2011. There remains today a huge discrepancy between the FLEET Auditor's findings and plaintiffs' own audit of FLEET for the period of January 1, 2009 through April 30, 2010.

110. Besides the fact that the FUNDS' Auditor fails to follow GAAS when conducting audits, more troubling is that the Auditor is instructed by the FUNDS to ignore potential credits of plaintiffs;

111. Upon information and belief the Auditor at the direction of defendants UNION, FUNDS, and TRUSTEES created false and fraudulent audits for both the FLEET and TRANSIT audits to justify said defendants' illegal attachment of over $1,100,000.00 for their two audits.

112. To date defendants FUNDS, UNION and TRUSTEES have illegally over attached plaintiffs service payments from the defendant DOE using fraudulent documents and audits as follows:

$1,100,000.00   for May 2009
$ 354,173.64    for November 2010
$  61,212.14    for Transit Audit
$  106,974.28   for March 2011
$1,213,744.19   for security deposit
$  777,967.54   for Fleet Audit
$3,507,097.51

113.    As a result of defendants UNION, FUNDS and TRUSTEES operating a

criminal racketeering enterprise, plaintiffs have been damaged in amounts to

be determined at trial but no less than $5,000,000.00 plus treble damages,

plus punitive damages, plus legal fees.

114.    By the above alleged acts defendants, UNION, FUNDS and TRUSTEES,

each of them, injured and continue to injure plaintiffs in their business or

property in violation of 18 USC §1964(c) which provides in relevant part

that

"[a]ny person injured in his business or property by reason of a
violation of section 1962 may sue therefore in any appropriate
United States District Court and shall recover threefold the damages
he sustains and the cost of the suit, including a reasonable attorney's
fee…"

**WHEREFORE,** The plaintiffs, demands judgment:

1. On the First Cause of Action awarding plaintiffs a declaratory judgment;

2. On the Second Cause of Action in amounts to be determined at trial but no less than $1,000,000.00 plus interest;

3. On the Third Cause of Action in amounts to be determined at trial but no less than $1,000,000.00 plus interest, plus punitive damages;

4. On the Fourth Cause of Action in amounts to be determined at trial but no less than $5,000,000.00 plus interest, plus punitive damages;

5. On the Fifth Cause of Action in amounts to be determined at trial but no less than $5,000,000.00 plus interest, plus punitive damages, plus treble damages;

6. On the Sixth Cause of Action awarding a declaratory judgment; and

7. On the Seventh Cause of Action in amounts to be determined at trial but no less than $5,000,000.00 plus interest, plus punitive damages, plus treble damages, plus legal fees.

Dated: Staten Island, New York
June 14, 2011

Yours etc.,
/S/ Robert Prignoli
Attorney for Plaintiffs
475 Bement Avenue
Staten Island, New York 10310
(718) 815-7800

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.:11-CV-2140 (NGG)

USA UNITED FLEET INC.,
USA UNITED TRANSIT INC.,
USA UNITED BUS EXPRESS INC.,
TOM TOM ESCORTS ONLY, INC.

      -against-

      Plaintiffs,

DIVISION I 181 AMALGAMATED TRANSIT
UNION NEW YORK EMPLOYEES PENSION FUND,
DIVISION I 181 AMALGAMATED TRANSIT
UNION NEW YORK WELFARE FUND
and NEW YORK CITY DEPARTMENT
OF EDUCATION,
DIVISION I 181 AMALGAMATED TRANSIT
UNION NEW YORK EMPLOYEES PENSION FUND
and its Trustees: MICHAEL CORDIELLO,
STANLEY BRETTSCHNEIDER, NEIL STRAHL,
DOMENIC GATTO, ANDREW BRETTSCHENIDER,
JEAN-CLAUDE CALIXTE and THOMAS
JEMMOTT and JOHN DOES I-X being fictitious
names intended to be FUNDS Trustees, their true
names being unknown to plaintiffs.

      Defendants.

And

DIVISION I 181 AMALGAMATED TRANSIT
UNION NEW YORK WELFARE FUND
and its Trustees: MICHAEL CORDIELLO,
STANLEY BRETTSCHNEIDER, NEIL STRAHL,
DOMENIC GATTO, ANDREW BRETTSCHENIDER,
JEAN-CLAUDE CALIXTE and THOMAS
JEMMOTT,

      Counterclaim Plaintiffs

      -against-

USA UNITED FLEET INC.,
USA UNITED TRANSIT INC.,
USA UNITED BUS EXPRESS INC.,
TOM TOM ESCORTS ONLY, INC.

And

DANA PRISTAVEC, WILLIAM MORAN,
DENNIS SCIALPI, THOMAS SCIALPI,
NORTHEAST TRANSIT, INC., NORTHEAST
BUSES, INC., and NORTHERN TRANSIT, INC.

      Counterclaim Defendants.

AMENDED COMPLAINT

ROBERT PRIGNOLI, ESQ.
Attorney for Plaintiffs
475 Bement Avenue
Staten Island, New York 10310
(718) 815-7800